First argued case is Vivint, if that's the proper pronunciation, v. ADT, 2023-1995. Mr. Freeman. Thank you, Your Honor. May it please the Court, good morning, my name is Parrish Freeman. I represent the appellant, Vivint, in this matter. We're here today on a claim construction issue. The claim language at issue is a predefined area. We need to decide whether the board got it right when they said it's an area that it's defined in advance, is the only construction they gave, or whether Vivint's construction is correct, which involves interacting with a screen to select an area to focus attention upon. You don't challenge the defined in advance part of it. You just say there should be interaction. Correct, that's correct. And to your point, the board's construction really can't be correct because it doesn't resolve the conflict. It doesn't tell us anything about whether Jen or Monroe disclose and teach a predefined area. It just answers the question of when, which is a question that just doesn't address anything. The board also didn't cite any intrinsic record support for the construction, so there's nothing really pointing to the idea that defined in advance gets the job done. What evidence are you pointing to in the specification to say that in this method claim, there should be an additional step, that is, that a person would, you know, identify a predefined area within the camera's field of view? So first, the board agrees, apparently, that there should be an additional step as well, because they said in response to our superfluousness argument that you have to, the step is you have to point the camera. It's not superfluous. Predefining an area is not superfluous. You have to point a camera. So somebody, a user has to do something. This is a question more like there's a predefined area. Does it matter how it's predefined? In other words, by a person selecting an area within the field of view or just pointing the camera, the area has to be predefined, but what is your support for saying that it can't just be pointing the camera? So it's the language in the patent that talks about the invention of obscuring content on a screen. And then there are, there's the language in the patent about having two predefined areas, which suggests that there's one camera involved, but we know that there's one camera involved in the parent patent, the 990, which claims it that way. It claims one camera looking at two different predefined areas. If you're going to have two different predefined areas within the same field of view, they obviously have to be delineated from each other. So that's what leads us to the idea that something else is going on. You have different claim. The claims are different in the 159 from the 990. And while certainly, and it seems to me that the specification supports both just setting up the camera, but also setting up, as would be required in the 990 patent, creating two separate areas within the same screen. Well, the problem with that is that it means that in the 990 patent and the 159 patent, the same, they're identical specifications. That phrase, a predefined area, means something different in the specifications of those patents. And that just is not consistent with the law. Why would that mean something different? You have the same predefined area, but the 990 patent just, in the claims, takes it one step further based on the specification and says, in the screen you have this area and then the person moves to this area. Whereas in the 159 patent, you just have one perimeter area. Well, the reason is because of the obscuring language and really it's because of the extrinsic evidence as well, which once we look through everything, we still have questions. The law says you can look to the extrinsic evidence. And when we talk to our expert about this, we learn about this region of interest technology. So that's what's in the mind of the person of skill and the art at the time, is that there is this technology that involves selecting boxes on a screen, drawing boxes on a screen. I hear what you're saying and I understand your argument. I see your specification as doing something different with predefined area. First of all, it doesn't tell, it doesn't disclose identifying a predefined area within the camera's field of view. I don't see that it says, hey, you're going to go ahead and look in the camera and make a circle around the part you care about. I mean, that step might be brought in by extrinsic evidence, but I don't see it in the specification per se. But more importantly, in your specification, it does define what the predefined area is in multiple places. For example, in column 8, line 15, it says in some embodiments, predefined area 405 may include a place of business, such as a restaurant, a shop, a waiting area of a customer, client, and or patient. And then elsewhere, it has other examples. It could be a parking lot. It could be a parking garage. It says that it could be a restaurant, a building, an animal cage, a wilderness area. There's nothing about a person how that area is identified, not a thing that I can find in your spec. So what is your response to that? So it also talks about detecting entry into, I'm sorry, across a perimeter of that predefined area. So if you're talking about the perimeter of a wilderness area, a perimeter of an animal cage, the doorway, you're looking at the whole thing. And I agree, it's a little bit ambiguous. But when you take it into account with everything else, it tells us that when we talk about obscuring and having two different areas in the screen, all that together tells us this needs to be something customizable so you can zero in. You're looking at a bigger area. You're looking at a whole, they say it's a whole parking garage. It's a whole wilderness area. And we just want to know when you encroach the perimeter. The perimeter of what? A predefined area. Well, then you have to be able to customize it. Where does your specification disclose the step of a user looking in the field of view of the camera and then circling the part that they're particularly interested in? It doesn't expressly disclose that step. And it doesn't expressly disclose the step of pointing, panning, zooming, like the bird said. That's right, but why couldn't the interpretation include both? It's not maybe a broadest reasonable interpretation anymore. But without the specifics being disclosed, why isn't it fair for the board reading this back to say it's the broader view? It could include either pointing the camera or a person identifying particular areas within the field of view of the camera. Well, it's the obscuring language, obscuring content on a screen that made me, when I started looking at all this, come to this conclusion, combined with speaking with our expert and looking at what the experts knew or what the person of skill knew at the time about the technology. So they're looking at it, and they have in mind, they know about this region of interest. So when they see something that says predefined area in a vacuum, sure, that's anything. When you see that it could be two of those in the same field of view, you see it involves obscuring other content on the screen, and you know about this region of interest technology, our expert said, well, that makes me think of region of interest technology. It was an interesting conversation with him because I kind of had in mind that, but I had your problem. I didn't see it in there. And he tells me about this technology, gives me a document, and there it was. But how do we know that when using the phrase predefined area, which the specification uses more broadly, that they were trying to bring in, what did you call it? What was the technology that you called predefined? Region of interest.  How do I know that the intent of the inventor was to use region of interest when it's not in the specification? Well, for the reasons I just explained, it's written for the person of skill in the art. I get it. Okay, thank you. So, well, there are other indications. It wasn't just our expert. We have Mr. Parker, the petitioner's expert, who talked about the checkerboard technology. Same idea. It doesn't involve drawing boxes, but it involves drawing a grid, and you select or deselect the things that you want to obscure, keep quiet, and activate the things that you want to focus on. Well, the point is that it's that combination of the things in the intrinsic record that I just mentioned. It drives us to look at the extrinsic evidence. If you look at the intrinsic record and you come to the conclusion that it's ambiguous, I think the case law tells us in that case we have to look to the extrinsic evidence. At Tilly and Kay's case. Are you saying, Mr. Parker, you think there is ambiguity in the specification here? I don't think I'm saying that necessarily. I'm saying if someone were to... I understand, but you're not saying there's ambiguity in the spec. I'm saying that the extrinsic evidence helps. It helps inform what's going on. As Judge Stoll pointed out, there's no express definition. So there are a lot of indications of what's going on. You have some mixed signals. That sounds like the definition of ambiguity, but I'd rather not go on the record calling my own patent ambiguous. No, I understand. So what you're saying is more a situation, perhaps, of the spec is there, but there aren't things... What's there is easily understood, but there are things that aren't there to help you if they were in there. That's very true. And also, if we think about it from the standpoint of, you know, these were written for people of ordinary skill and yard. They're not... Maybe the person who wrote the patent used a little bit of shorthand and was talking to the inventor and thought, I don't need to explain this in great detail. They know what I'm talking about. I'm not saying people couldn't hear it. I see that I'm into my rebuttal time. If you have any further questions in my opening... Then we'll save it for you. Okay. Mr. Simmons. Thank you, Your Honor. Simmons or Simons? Simons. Simons. So I'm David Simons on behalf of ADT. Good morning. I want to start with the question of extrinsic evidence in this case and point to an important admission that was made in the oral hearing before the PTAB. Rivint admitted in the oral hearing that predefined area is not a term of art. So it is not a technical term of art of the type that you would need some context expert testimony. So that really compels us to focus on the intrinsic record. What does the specification say and what is the customary and ordinary meaning of predefined area to one of skill and the art? And the board properly found that predefined area is simply an area defined in advance. We had dictionary definitions. We cited to a prior case from this court with which predefined area or predefined was used. And again, it was not a term of art in that other case as well. And this court said defined in advance. So it's a commonly understood meaning. And so the question is, is there anything in the spec that would make us depart from this customary and ordinary meaning and import this additional step into the claim? And there really is nothing. They pointed to the parent patent, but I think Judge Schall's questions raised the point that I was going to raise on that. They also point to this obscuring language, but this obscuring language doesn't get there. What that was is in the beginning of the claim, sorry, in the summary of the invention section, there's a statement that we disclose a computer system with a process. Let me get the exact language here. But it was a computing device configured to obscure content on a screen as also described. The device may include a processor and memory and electronic communication with the processor. The memory may install instructions that can then execute the method steps of the claim. So that's the sort of introductory boilerplate in the summary of the invention. And they lean on that word obscure. But there's three reasons why that word obscure doesn't get all the way to importing this brand-new method step into the claim. First, obscure content on a screen is not in the claim. It's just in that summary of the invention section and just in that one place. Second, that obscure content on a screen is part of the computing device. It is not part of the definition of predefined area. It's not a predefined area definition. It never says you obscure something to define a predefined area. And then third, when we looked for other driven patents, we found the same basically boilerplate introductory language in other driven patents that were completely emulated technology. It was mesh network patents. Mr. Sonskis, can I ask you just one question? You alluded to the 990 patent. It came up in the colloquy with Mr. Freeman. Has the 990 patent, is it in litigation? Has it been asserted? Has it been before the board? No. So the 990 patent was directed at a more specific embodiment, which is disclosed in the spec, which is a parking lot embodiment. And what that one was about and those claims were about is you have a car that comes into a parking lot that's owned by a shop. And you have a person get out of the car. So it has one predefined area to detect the car, a second one to detect where the person goes. And the idea there is you wanted to notify if someone was parking your lot but not going into your store. So that's what that particular embodiment was. But that's not in litigation. No, not at all. The accused product has a video doorbell. Yeah. Okay. So for the obscuring language, it's not in the claim. It is not linked to predefined area. And it is used in other patents that are completely unrelated, which suggests it's not invoking this, you know, regions of interest or checkerboard technology. If so, why is it in a mesh network patent as well? So Mr. Composite Counsel also talked about this detecting entry across the perimeter. That in the specification in describing how the detecting step is performed, it says, well, you have a predefined area that's got a predetermined perimeter. And you detect when the entity crosses that perimeter. So it's describing the mechanics, at least in that embodiment, of how that detecting step is performed. It's not some sort of further limitation of the claim. It's not saying you draw a rectangle perimeter. It's just describing the mechanics. And, again, importantly, predetermined perimeter is not in the claim. The claim just says predefined area. So there really is nothing here, anywhere in the specification, that would suggest this additional language or this additional importation of this method step, which is nowhere in the spec, not even cited in the file registry. So the expert that came up with this construction and handy-counseled this document describing it, that prior art device, this IVEX system, wasn't even cited in prosecution. It's just nowhere appears. It came out of nowhere except out of the expert. And there's just no basis to say that when a skill in the art, where we are looking for the customary and ordinary meaning of a non-term of art, would say, oh, someone reading this would think of the system I developed 20 years ago and import that methodology into the claim. It just can't get there. So the last issue I wanted to discuss was at the end of our brief. And it's this question of whether, even if they prevail on this claim construction, even if the board, or even if this panel, reverses the predefined area definition and adopts wholesale livens construction, still need to affirm. This was an alternative grounds that the board had for affirming. And it was this. There was an admission before the board in oral hearing that this claim can actually cover the entire field of view of a camera. So the way this came about is, you know, the construction that Riven offered here was a physical area defined by a user-configurable region of a camera's field of view having delineated boundaries where the region within the boundary is a region of interest and any regions not within the boundary are regions of disinterest. That's the construction that the expert proposed, and it was in their briefing. And we had always understood, I believe the board understood, they were arguing you had to narrow the field of view. You couldn't just use a whole field of view. You had to narrow it. And that's what their first expert said in their preliminary opposition to the petition was, talked about narrowing, you can't use the fuzzy edges of a field of view. But then they went with this definition. So we all thought they were arguing to narrow it. But then Judge Lee, in the hearing, asked a very pointed question. He said, as I look at this language, the actual language you proposed here, I don't see it expressly precluding the entire field of view from being used. You just say region of interest, why can't the whole field of view be the region of interest? And honestly, to our surprise, Riven's counsel agreed with that and said, yes, this claim construction does potentially cover using the entire field of view. But what distinguishes the prior art is that we believe the claim requires a user interaction with a screen. So defining this configurable region has to be done by a user interacting with a screen. And that would distinguish the prior art, which doesn't talk about user interaction with a screen. And the way the board handled that was to say, what you're arguing now is a modified claim construction. The construction you offered says nothing about user interaction with a screen. It just says a user configurable region. It doesn't say how that configuration is done. And you're now narrowing your claim construction to add an additional requirement that was not in the briefing. And under the board's rules, you can't do that at the oral hearing. You have to stick with your original claim construction. You can't modify the claim construction. And so then the board, so here's what that left us. The board said, okay, here's your claim construction. You're admitting that it can cover and it can with the entire field of view. The prior art discloses a camera being set up to cover an entire field of view. Therefore, you have not distinguished the prior art with the construction that you offer. And Vivint on this appeal has not challenged the board's factual findings about the prior art. They've only challenged the construction of predefined area. So even if you agree with them about this construction, to reverse, you'd still have to find that the board abused its discretion by refusing to allow this configured on a screen addendum to the claim construction in. And they can't get there. I mean, the case law is pretty clear that when you change your claim construction at the hearing, that's disallowed. The case they cite, you know, for saying this was an abuse of discretion is the Chamberlain case. But that was readily distinguishable. In the Chamberlain case, they did not change the claim construction in the oral hearing before the board. They pointed to additional different claim language. So what happened in that case, this was, the Chamberlain case was one of these cases for in a control panel or control system for a garage door. And when you set up your garage door command control panel, you've got to go through a learning mode where you teach it basically how far to open and close and fine tune. I've had cases on garage door openers. I know these technology well. So the patent in question talked about a step of an identifying step where you identify activities. It's part of this learning thing. The claim construction dispute in Chamberlain was whether you had to identify multiple activities or just one. And the petitioner took the view that you have to identify, or sorry, yeah, the petitioner took the patent to identify multiple activities. So then in the final briefing, the other side argued, okay, even if you have to identify multiple activities, in the prior right, I see multiple activities here. So let me go to here. What happened at the hearing is they said, okay, the multiple activities you have identified in the prior right happen at the wrong time. Because there's an additional claim language that says you have to, in response to a signal, the additional claim language said that there was another step that said transmitting guidance responsive to the identifying step. And in the prior art, those identifications they pointed to happened before that transmission of the signal. So the end result was their claim construction of multiple was correct. And the prior art did not disclose that because those identifications were at the wrong time. So what happened there was not a change in claim construction at all. The original claim construction was multiple. They pointed to, in the hearing, additional language in the claim that disallowed or basically disproved the read on the prior art that the side was trying to do in their final brief. So, again, there was nothing in there about changing a claim construction position before the board. We cited the Dreesen case, which is one where this court affirmed the board saying point blank, hey, you can't change your claim construction at the oral hearing. And that one they tried to argue that, well, this claim is really directed to non-fungible tokens. And that wasn't in the briefing. The board said you can't change that. This court affirmed. So even if you were to decide that predefined area imports all this additional functionality, you still have to find an abuse of discretion by the board in refusing to include the user interaction with screen in the claim construction, which was not in their language or in their briefing. So unless the court has any other questions, I'll stop there. Council, as you know, you have predefined time period. This is no requirement that you use it all up. So, thank you very much. Thank you. Mr. Freeman. I'm going to address the business about our claim construction and the configure on a screen language. It's language we put together to try to capture this idea of the region of interest technology, but also the other technology that we knew about from deposing ADT's expert, this checkerboard thing. So rather than just say draw a box on a screen, we say configure, user configurable. So it's a little bit like a Rorschach test, it seems to me, in trying to understand why Judge Lee said what he said. He came into it thinking when we said user configurable, we mean point of camera. It never crossed our mind that we meant that. But importantly, this is where a real point I want to make. We didn't get a chance to have that challenge and developed. ADT didn't cross-examine our witness. They didn't put up their own expert. Once we put in our evidence, it just sat there. And we had no development of a record, development or bringing that misunderstanding, that issue to light so that we could clarify it. So it comes to light for the first time before the board when Judge Lee asked about it. And the idea that you can draw the box to be co-extensive, sure you can draw the box to be co-extensive. You can deactivate or activate all the squares in the matrix. But why would you do that? But the fact that you could do that doesn't mean that the prior art invalidates the claims. You still have to have that interaction step. Do you agree that the board's weighing and evaluation of the extrinsic evidence, including the expert testimony, is reviewed by us for substantial evidence because it's a factual issue? So I saw that Mr. Simon had said that the board's conclusion that it was new, if I remember right. He said that was a... No, I'm not talking about new. I'm talking about... So you are relying, you're saying that a person of ordinary skill in the art seeing your claim would know that what's being talked about is region of interest. And you're saying that based on expert testimony. But the board did not agree and didn't agree with the expert testimony, right? Didn't... And so the question is this. Maybe I'm missing something. But if I'm right about that, then my question is, isn't the board's determination on that a factual question that's reviewed for substantial evidence by this court because we have been told that while claim construction is the ultimate question of law, there could be underlying fact findings which really are relying on the extrinsic evidence. I agree with that. Yes, I think that's a correct statement of the law. It's an abuse of discretion standard as to whether you consider the evidence at all. And the board looked at it and more or less disregarded it. Didn't say that it was wrong. ADT didn't challenge the authenticity of the document. ADT didn't cross-examine our witness. We didn't have any development of that. But the board didn't say this is wrong, this is incorrect. The board just said that in its opinion, it didn't bring in, it didn't cause a modification or any kind of... It didn't inform the specification in the way that we proposed. That was the board's conclusion. I don't know if that's a fact finding. I mean, to me, the fact finding would be if the board said, yeah, I don't believe this. This is wrong. I think this is wrong. And I don't think the board said that. Regarding the language being boilerplate, we went through this, the obscuring language, that is. It is, I mean, it's clearly tied to defining an invention. Defining, I'm sorry, clearly tied to the predefined area and ascertaining it. The whole section, when you read it, it says a computing device that has a processor and a memory. The memory has instructions. The instructions execute code to help detect an entity entering into the perimeter of a predefined area. That's all part and parcel of obscuring. So the obscuring language is there. It does something. And that's what helps us understand that this region of interest technology was in play here. That's what led us to the conclusion that we had. And we would have loved to have developed that record, but ADT didn't engage. And they've got the permit proof here as the petitioner. And they came with money to pay the filing fee, but no evidence. Thank you, counsel. As you see, you have reached the predefined limit. Thank you, Your Honor. I'd like to thank both counsel. The case is submitted.